## UNITED STATE DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

FAEGRE & BENSON, LLP,
FELICIA J. BOYD, and
JOHN H. HINDERAKER,

          Plaintiffs,

v.

WILLIAM S. PURDY, SR.,
PLEASE DON'T KILL YOUR BABY,
a Minnesota corporation, and
DOES 1-10,

          Defendants.

**MEMORANDUM OF LAW & ORDER**
Civil. File No. 03-6472  (MJD/SRN)

_____

John P. Borger, Felicia J. Boyd, Laura G. Coates, and Michelle Paninopoulos, Faegre & Benson LLP, Counsel for Plaintiffs.

William S. Purdy, Sr., pro se.

_____

## I.    INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment and Entry of Permanent Injunction.  [Docket No. 139]  The Court heard oral argument on May 26, 2006.

1

## II.    FACTUAL BACKGROUND

### A.    Procedural Background

On December 15, 2003, Plaintiffs Faegre & Benson, LLP ("Faegre"), Felicia

J. Boyd, and John H. Hinderaker filed a complaint against Defendants William S.

Purdy, Sr., Please Don't KILL Your Baby ("PDKYB"), and Does 1-10, alleging that

Defendants registered numerous internet domain names that are confusingly

similar to Faegre's protected marks and that statements on Defendants' web sites

are defamatory.  Plaintiffs' First Amended Complaint alleges the following counts:

Count I: Violation of the Anticybersquatting Consumer Protection Act ("ACPA");

Count II: Infringement of Registered Marks; Count III: False Designation of Origin,

False Description, and False Representation in Connection with the FAEGRE

Marks; Count IV: False Designation of Origin, False Description, and False

Representation in Connection with Faegre's Trade Dress; Count V: Deceptive

Trade Practices; Count VI: Common Law Trademark Infringement; Count VII:

Common Law Trade Dress Infringement; Count VIII: Appropriation of Name; and

Count IX: Defamation.

On January 5, 2004, the Court issued an order granting Plaintiffs' motion

for a preliminary injunction and for a temporary restraining order ("January 5

Order").  The January 5 Order stated, in relevant part:

> 1.  Defendants and their officers, agents, servants, employees,
> attorneys, and all persons in active concert or participation with them

who receive actual notice of this Order are temporarily and preliminarily prohibited and enjoined from using the domain names faegre-benson.com, faegre-benson.org, faegre.biz, startribune-faegre-bensonlawfirm.com, startribune-faegre.com, and faegrebensonlawfirm.com.

2. Defendants and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order are also preliminarily enjoined from registering or using any domain name that both (1) incorporates, and is identical or confusingly similar to, Faegre's distinctive and protected marks FAEGRE & BENSON, FAEGRE, FAEGRE.COM or FAEGRE & BENSON LLP or any other marks identical or confusingly similar to any marks used or owned by Faegre, and (2) does not alert the Internet user to the protest or critical commentary nature of the attached web site within the language of the domain name itself.

* * *

5. Defendants and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order are also preliminarily enjoined from using any trademark that is identical or confusingly similar to Faegre's distinctive and protected marks FAEGRE & BENSON, FAEGRE, FAEGRE & BENSON LLP, and FAEGRE.COM, or any other mark used or owned by Faegre.

* * *

11. All Defendants and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order are ordered to cease illegal appropriation of the names of the Plaintiffs and all individuals associated or affiliated with the Plaintiffs.

Purdy filed an appeal of the January 5 Order, and the Eighth Circuit Court of Appeals affirmed that Order on April 4, 2005. Faegre & Benson, LLP v. Purdy, 129 Fed. Appx. 323, 325 (8th Cir. 2005) (unpublished).

On March 18, 2004, this Court set aside entry of default against Purdy and PDKYB and ordered PDKYB to file an answer, through counsel, within twenty days. [Docket No. 50] PDKYB has failed to answer or otherwise appear in this lawsuit through an attorney properly licensed before this Court.

On September 1, 2004, the Eighth Circuit issued an opinion upholding a similar preliminary injunction against Purdy in the case of Coca-Cola Co. v. Purdy, 382 F.3d 774 (8th Cir. 2004). On September 2, 2004, this Court issued an Order ("September 2 Contempt Order") finding Purdy in contempt of its January 5 Order for 1) failing to transfer ownership of certain domain names specifically addressed in the January 5 Order; 2) registering and using a number of domain names that were identical or confusingly similar to Faegre's trademarks in violation of the ACPA, 15 U.S.C. § 1125(d); and 3) illegally appropriating Plaintiff Felicia Boyd's name. [Docket No. 86] In that Order, the Court also determined that Purdy controlled PDKYB. (Sept. 2 Contempt Order at 18.) Purdy appealed the Court's September 2 Contempt Order, and the Eighth Circuit dismissed Purdy's appeal on November 23, 2004.

On April 28, 2005, the Court issued a second contempt order (April 28

Contempt Order") granting in part and denying in part Plaintiffs' motion for

contempt.  [Docket No. 119]  The Court found Purdy in contempt for ACPA

violations based on his continued use of certain internet domain names and for

appropriation of Hinderaker's name.  The Court clarified its Preliminary Injunction

to define the appropriate parameters of Purdy's use of Faegre's metatags to avoid

trademark infringement.  The Order required Purdy to pay accrued contempt

sanctions and attorney fees within ten days.  Purdy has still failed to pay these

amounts.

Since being held in contempt, Purdy has continued to register domain

names incorporating Faegre's trademarks: he has now registered the domain

name Faegre.be.  He has also registered domain names incorporating Hinderaker's

name and pseudonym, Hindrocket: senatorHinderaker.com and

senatorHindrocket.com.  Purdy has continued to copy Faegre's metatags

wholesale and attach them to his web pages.  Additionally, postings falsely

attributed to Faegre attorneys expressing support for Purdy or criticism of

Plaintiffs continue to appear on Purdy's web site, pleasedontkillyourbaby.com.

Plaintiffs' expert, Eric Nevalainen, has submitted declarations, which have not

been contradicted by any admissible evidence, opining that Purdy, or an

individual authorized by Purdy, posted these messages on the web site.

Plaintiffs now move for partial summary judgment and a permanent injunction.  They request judgment in the amount of the accrued contempt fine and previously awarded attorneys fees, plus prejudgment interest.  They further propose to dismiss their remaining claims, including all claims for compensatory and punitive damages, without prejudice, so long as they may reassert those claims within twelve months after entry of judgment should Defendants appeal the judgment.  Plaintiffs request that the Court convert its Preliminary Injunction and clarifying orders into a similar Permanent Injunction against Defendants.

## III.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Celotex, 477 U.S. at 323.  Summary judgment is only appropriate when "there is no dispute of fact and where there exists only one conclusion."  Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted).

**B.     ACPA Claim (Count I)**

**1.     Introduction**

In Count One of their First Amended Complaint, Plaintiffs allege that Defendants registered domain names that were identical or confusingly similar to one or more of Faegre's protected marks in violation of the ACPA, specifically: faegre-benson.com, faegre-benson.org, faegre.biz, startribune-faegre-bensonlawfirm.com, and startribune-faegre.com.  The ACPA prohibits a person from registering, trafficking in, or using a domain name that is "identical or confusingly similar to" a distinctive mark, if the person has bad faith intent to profit.  The ACPA states:

> (1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person
>
>> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>>
>> (ii) registers, traffics in, or uses a domain name that–
>>
>>> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

15 U.S.C. § 1125(d).

## 2.    Distinctive Marks

The undisputed evidence demonstrates that Faegre's federally registered marks, FAEGRE & BENSON LLP and FAEGRE & BENSON LLP in stylized letters in white on a black background, were distinctive before Defendants registered the domain names at issue, beginning in 2003.  At that time, Faegre had a pending application for federal registration of the mark FAEGRE.COM, which has since been granted.  Faegre also claims common law trademark rights in the aforementioned marks, FAEGRE & BENSON LLP, FAEGRE.COM, and FAEGRE & BENSON LLP in stylized letters in white on a black background (collectively the "FAEGRE Marks").

Faegre has used the distinctive FAEGRE Marks extensively and prominently in interstate commerce beginning in 1996.  Federally registered marks are entitled to the presumption that they are distinctive and nonfunctional.  <u>Aromatique, Inc. v. Gold Seal, Inc.</u>, 28 F.3d 863, 869 (8th Cir. 1994).  Defendants have submitted no evidence to rebut that presumption.  Based on the evidence in the record, the Court concludes that the FAEGRE Marks were distinctive, nonfunctional, and protected by the time Defendants began registering the domain names at issue in this lawsuit.

### 3.     Identical or Confusingly Similar

In order to succeed under the ACPA, a plaintiff must show that the domain name at issue is "identical or confusingly similar to" the protected mark.  15 U.S.C. § 1125(d)(1)(A)(ii)(I).  The Court has already determined, in its January 5 Order [Docket No. 24], its September 2 Contempt Order [Docket No. 86], and its April 28 Contempt Order [Docket No. 119] that dozens of the domain names used by Purdy were confusingly similar to Faegre's protected marks.  Plaintiffs now request that the Court permanently enjoin Defendants from registering or using those same names, as well as Faegre.be, newly registered by Defendants. Plaintiffs also request that the Court grant summary judgment with regard to the five domain names listed in the First Amended Complaint: faegre-benson.com, faegre-benson.org, faegre.biz, startribune-faegre-bensonlawfirm.com, and startribune-faegre.com.

Addition of generic terms or a top level domain extension to a protected mark can create a domain name that is confusingly similar.  Coca-Cola Co. v. Purdy, 382 F.3d 774, 784 (8th Cir. 2004).  "[A] domain name that incorporates a trademark is 'confusingly similar to' that mark if 'consumers might think that [the domain is] used, approved, or permitted' by the mark holder."  Ford Motor Co. v. Greatdomains.Com, Inc., 177 F. Supp. 2d 635, 641 (E.D. Mich. 2001) (citation omitted).  Thus, if words are added to the mark that do not conclusively

distinguish the domain name from the protected mark, the confusingly similar test

is met.  Id. at 642.

Based on the above standard, and abiding by the reasoning in the Court's

previous orders, the Court finds that the following previously enjoined domain

names are confusingly similar to the protected FAEGRE Marks:

faegre-benson.com;
faegre-benson.org;
faegre.biz;
startribune-faegre-bensonlawfirm.com;
startribune-faegre.com;
faegrebensonlawfirm.com;
thewashingtonpost-faegrebensonconnection.com;
faegre-benson-christianperspective.com;
faegre-benson-tencommandments.com;
faegre-benson-jesus.com;
faegre-benson-trialbyjesus.com;
faegre-benson-jesus-hislittleones.com;
startribune-faegre-benson-jesus.com;
faegre-benson-eighthcircuit-firstamendment-jesus.com;
faegre-benson-voteforpresidentbush.com;
faegre-bensonsupportsjohnkerry.com;
johnkerrylovesfaegre-benson.com;
faegre-johnkerry.com;
john-faegre-kerry.com;
johnkerry-faegre-benson.com;
faegre-benson-ethics.com.

Additionally, the Court concludes that the domain name Faegre.be, also

registered by Purdy, is confusingly similar to the FAEGRE Marks because it is

identical to the mark FAEGRE.COM and to a portion of FAEGRE & BENSON, LLP,

with the insignificant addition of a top-level domain extension.

### 4.    Registration, Trafficking, or Use of the Domain Names

Based on the evidence before it, the Court concludes that Purdy, and PDKYB under his control, registered and used the twenty-two confusingly similar domain names listed in the previous section.

### 5.    Bad Faith Intent to Profit

There are "nine nonexclusive factors for courts to consider in determining whether a person has acted with bad faith intent:"

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

Coca-Cola Co., 382 F.3d at 785 (quoting 15 U.S.C. § 1125(d)(1)(B)(i)).

This Court has previously found a likelihood of success on the merits of this claim, including a preliminary finding of a bad faith intent to profit, in its January 5 Order, which was affirmed by the Eighth Circuit Court of Appeals.

Defendants have no trademark or other intellectual property rights in the domain names at issue. (factor I)  None of the domain names contain any name by which any Defendant is known. (factor II)  Defendants have not previously used any of the names at issue in connection with the bona fide offering of goods or services. (factor III)

Factor IV, Defendants' noncommercial or fair use of the mark in a site accessible under the offending domain name, is neutral. The Court has found fair use of Faegre's marks in relation to the parody trade dress on some of Defendants'

12

web sites.  Thus, Defendants have at times used the FAEGRE Marks in a legitimate

manner in the sites accessible under the particular domain names.

Defendants' use of the domain names incorporating the FAEGRE Marks

tarnished and diluted Plaintiffs' marks by relying on Faegre's good name and

goodwill in order to divert internet traffic to pages displaying graphic images in

order to generate publicity for Defendants' cause.  (factor V)  Cf. Coca Cola, Inc.,

382 F.3d at 786 ("It appears that [Purdy] registered many of these domain names

not because of stands the plaintiffs had taken on abortion, but rather to divert

Internet users to websites that could tarnish and disparage their marks by creating

initial confusion as to the sponsorship of the attached websites and implying that

their owners have taken positions on a hotly contested issue.").

Purdy has demonstrated a past pattern of conduct of seeking to profit from

his actions by offering to exchange domain names for valuable consideration.

(factor VI)  See, e.g., Coca-Cola Co., 382 F.3d at 786 (finding bad faith intent to

profit when Purdy "offered to stop using the Washington Post domain names in

exchange for space on the editorial page in that newspaper").  In this case, he has

offered to stop his illegal behavior such as violating the ACPA and appropriating

the names of Plaintiffs and Faegre attorneys, on the condition that Faegre stop

funding Planned Parenthood or that it donate money to organizations opposing

abortion.

Defendants have also shown bad faith by providing misleading contact information when applying for registration of the infringing domain names and by failing to update the contact information.  (factor VII)  For example Purdy has purportedly transferred registration of domain names to third parties, yet kept Purdy and PDKYB listed as the administrative contacts.

Defendants have registered multiple domain names that they knew were identical to or confusingly similar to the FAEGRE Marks.  (factor VIII)  This Order has noted twenty-two such domain names.  Additionally, Purdy has registered dozens such domain names in other cases.  See, e.g., Coca-Cola Co. v. Purdy, No. 02-1782 ADM/JGL, 2005 WL 212797 (D. Minn. Jan. 28, 2005).

Finally, as this Court has previously noted, the FAEGRE Marks are distinctive.  (factor IX)

Based on the above factors, the Court determines that Plaintiffs have proven that Defendants acted with the requisite bad faith intent.  The Court grants Plaintiffs' motion for summary judgment on Count I.

## C.   Trademark Infringement Claims (Counts II and III)

### 1.   Introduction

Count II alleges infringement of registered marks in violation of 15 U.S.C. § 1114(1), and Count III alleges false designation of origin, false description, and false representation in connection with the FAEGRE Marks in violation of 15

14

U.S.C. § 1125(a).  In order to succeed under either statute, Plaintiffs must prove that they own a protected, distinctive trademark and that Defendants' alleged infringing use was likely to confuse consumers about the source of Defendants' product.  Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598, 601 (8th Cir. 1999), cited in Jeld-Wen, Inc. v. Dalco Indus., Inc., No. 99-1005, 1999 WL 1024002, at *2  (8th Cir. Nov. 10, 1999) (unpublished).

## 2.    Defendants' Registration of Infringing Domain Names

### a.    Ownership of a Protected and Distinctive Trademark

The FAEGRE Marks meet the first prong of the test because they are distinctive, nonfunctional, protected trademarks, as explained in Part (III)(B)(2) of this Opinion.

### b.    Likelihood of Confusion

To determine whether there is a likelihood of confusion in a trademark infringement action, the Court must consider the following six factors, none of which alone is dispositive:

> 1) the strength of the owner's mark; 2) the similarity between the owner's mark and the alleged infringer's mark; 3) the degree to which the products compete with each other; 4) the alleged infringer's intent to pass off its goods as those of the trademark owner . . .; 5) incidents of actual confusion; and 6) whether the degree of purchaser care can eliminate any likelihood of confusion which would otherwise exist.

Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc., 130 F.3d 1305, 1308 (8th Cir.

1997) (citations omitted).  In order to decide Plaintiffs' motion for summary

judgement, the Court compares the FAEGRE Marks and the following domain

names registered by Defendants listed in the First Amended Complaint:

faegre-benson.com, faegre-benson.org, faegre.biz,

startribune-faegre-bensonlawfirm.com, and startribune-faegre.com.  Furthermore,

in order to analyze Plaintiffs' request for a permanent injunction base on

Defendants continued violations, the Court also analyzes all twenty-two domain

names listed under the ACPA claim.

Faegre has provided ample evidence of the strength of the FAEGRE Marks.

It is a large, nationally known law firm that has continuously used its marks in

extensive advertising since 1996.

As the Court explained when addressing the ACPA claim, Plaintiffs have

also met the second factor.  Defendants registered domain names that incorporate

the FAEGRE Marks, and those domain names are identical or confusingly similar

to Plaintiffs' distinctive and protected marks.

As to the third factor, Faegre and Defendants do not compete with one

another in the traditional sense.  However, Defendants relied on Faegre's good

name and good will in order to divert internet traffic to pages displaying

Defendants' graphic images and thereby generated publicity for Defendants'

16

cause.  See Coca Cola, Inc., 382 F.3d at 787 ("Use of a famous mark in this way

could be seen as the information superhighway equivalent of posting a large sign

bearing a McDonald's logo before a freeway exit for the purpose of diverting

unwitting travelers to the site of an antiabortion rally.").  Although the parties do

not compete for goods or services, the third factor is met because "Defendants

intended to redirect Plaintiffs' audience and customers to view content of their

choosing."  Coca-Cola Co. v. Purdy, No. 02-1782 ADM/JGL, 2005 WL 212797, at

*3 (D. Minn. Jan. 28, 2005) (unpublished) (citation omitted).  In any case, direct

competition is not essential to a claim of trademark violation because "confusion,

not competition, is the touchstone of trademark infringement."  Mutual of Omaha

Ins. Co. v. Novak, 836 F.2d 397, 399 (8th Cir. 1987) (citation omitted).

    The fourth factor is satisfied because Defendants registered the domain

names with a bad faith intent to profit from them and with the intent to lure

internet users to their web sites when, in fact, the users seek Faegre's web site, as

the Court explained in the context of Plaintiffs' ACPA claim.

    The fifth factor considers incidents of actual confusion.  Actual confusion is

not essential to a finding of infringement, but it does provide positive proof of a

likelihood of confusion.  SquirtCo v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir.

1980).  Plaintiffs submitted two employee declarations stating that a client and a

potential employee who were attempting to obtain information about Faegre or

17

its individual attorneys were diverted to Defendants' web sites in the course of their searches. The declarations raise a significant hearsay issue because they merely repeat the statements Faegre employees heard over the telephone from anonymous sources. However, failure to meet this factor is not dispositive of a finding of likelihood of confusion.

The final factor considers whether the degree of consumer care can eliminate any likelihood of confusion which would otherwise exist between products. Because of the nature of the internet, consumers are unlikely to avoid confusion even through the exercise of due care. Because it takes little effort to enter a web site, usually one click from a search engine's list, consumers "are more likely to be confused as to the ownership of a web site than traditional patrons of a brick-and-mortar store would be of a store's ownership." Coca-Cola Co., 2005 WL 212797, at *4 (citation omitted). As a result, "ordinary Internet users do not undergo a highly sophisticated analysis when searching for domain names." Id. (citation omitted). See also Coca-Cola, 382 F.3d at 789 (noting that "[a]n unwary Internet user might anticipate that the attached web site would be sponsored by that plaintiff because of the similarity of the domain name to the plaintiff's mark").


Taking these six factors together, the Court concludes that a likelihood of confusion exists between the FAEGRE Marks and Defendants' use of similar

domain names.  There is a danger of initial interest confusion.  Thus, the Court

grants summary judgment on Plaintiffs' trademark infringement claims based on

Defendants' registration and use of infringing domain names.

### 3.    Metatags

Use of a competitor's trademark in a web page's metatags with the purpose

of diverting internet users from their intended web site destination can constitute

trademark infringement under the Lanham Act.  See Brookfield Communications,

Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1062-66 (9th Cir. 1999).  Because

Defendants attached Faegre's meta-description tags to some of their web sites,

some search engines may list summary descriptions of Defendants' web sites that

appear nearly identical to the summary of Faegre's actual web site.  However,

under the fair use doctrine, Defendants may legitimately use Faegre's trademarks

in their metatags in order to refer to Faegre and to describe the content of their

web sites.  Brookfield Communications, Inc., 174 F.3d at 1066; Bihari v. Gross, 119

F. Supp. 2d 309, 322-23 (S.D.N.Y. 2000).

The Court previously clarified its Preliminary Injunction to explain that:

> Purdy is not completely barred from use of Faegre's trademarks in the
> metatags of his web site.  Instead, Purdy may only use Faegre's
> trademarks in the metatags for his web sites to the extent that he is,
> in good faith, describing the content of his website.  Examples of the
> types of actions that would be indicative of bad faith include
> wholesale copying of Faegre's meta-description tags or HTML code,
> use of Faegre's marks in metatags attached to a site with a
> confusingly similar domain name, and use of Faegre's marks beyond

what is necessary to accurately describe the contents of Purdy's web site.

Faegre & Benson, LLP v. Purdy, 367 F. Supp. 2d 1238, 1247 (D. Minn. 2005).

Despite the Court's clarification, Defendants continue to copy Faegre's metatags wholesale and use them with their web pages. Based on the Court's previous Orders and Defendants' continued bad faith use of Faegre's metatags, the Court includes the above clarification in its Permanent Injunction.

### D. Misappropriation Claim (Count VIII)

The Court has previously found Purdy in contempt for registering the domain names feliciaboyd.info and hindrocket.com in order to take advantage of the good will and reputation associated with these names, to divert traffic to Defendants' web sites, to generate publicity, and to create the impression that Faegre attorneys support Defendants' actions. Faegre & Benson, LLP, 367 F. Supp. 2d at 1248-49. (See also Sept. 2 Contempt Order at 17). As the Court previously explained:

> "Appropriation protects an individual's identity and is committed when one 'appropriates to his own use or benefit the name or likeness of another.' " Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 233 (Minn. 1998) (footnote omitted). "To tortiously appropriate an individual's name, one must appropriate for the purpose of taking advantage of that individual's name, or reputation." Kovatovich v. K-Mart Corp., 88 F. Supp. 2d 975, 986-87 (D. Minn. 1999).
>
> The Minnesota Supreme Court cited the Restatement (Second) of Torts § 652C when recognizing the tort of appropriation. The

20

> Restatement notes that appropriation applies "when the defendant
> makes use of the plaintiff's name or likeness for his own purposes and
> benefit, even though the use is not a commercial one, and even
> though the benefit sought to be obtained in not a pecuniary one."
> Restatement (Second) of Torts § 652C, cmt. b. <u>See also</u> <u>Felsher v.</u>
> <u>Univ. of Evansville</u>, 755 N.E.2d 589, 600 (Ind. 2001) (finding
> appropriation when defendant used plaintiffs' names in e-mail
> addresses and web sites and holding that defendant misappropriated
> plaintiffs' names to his "advantage in that [the misappropriation]
> enabled him to pursue a personal vendetta").

<u>Faegre & Benson</u>, 367 F. Supp. 2d at 1247-48.   Faegre has standing to assert the

collective privacy rights of its partners and employees.   <u>Minneapolis Fed'n of</u>

<u>Teachers, AFL-CIO, Local 59 v. Minneapolis Pub. Schs., Special Sch. Dist. No. 1</u>,

512 N.W.2d 107, 109-10 (Minn. Ct. App. 1994).

As the Court previously explained, the public associates Faegre attorney

Hinderaker with his pseudonym, Hindrocket; thus the name Hindrocket is

protected from appropriation.   <u>See, e.g.</u>, <u>McFarland v. Miller</u>, 14 F.3d 912, 922 (3d

Cir. 1994) (holding New Jersey law prohibits appropriation of a celebrity's

nickname).   The Court concludes that Purdy is liable for appropriation for

registering and using the domain names feliciaboyd.info, hindrocket.com,

senatorHinderaker.com, and senatorHindrocket.com.

Plaintiffs have also demonstrated that multiple false statements attributed

to Faegre attorneys appear on Defendants' web pages.   These false statements

create the impression that Faegre attorneys support Purdy's actions.   However, the

Court previously refused to find Purdy in contempt based on false quotations

21

attributed to Faegre attorneys appearing on bulletin boards on his web pages

because the Communications Decency Act,  47 U.S.C. § 230, immunizes web site

operators from liability unless they themselves post the defamatory comments.

<u>Faegre & Benson</u>, 367 F. Supp. 2d at 1249.

Plaintiffs have now submitted evidence that Purdy, or someone operating

with his authorization, posted the offending comments.  Purdy has not submitted

admissible evidence that he did not post the statements at issue.  Purdy has

refused to admit or deny posting such statements by asserting his Fifth

Amendment privilege.  The Fifth Amendment does not forbid an adverse

inference when the privilege is claimed by a party to a civil action.  <u>United States</u>

<u>v. $141,770 in U.S. Currency</u>, 157 F.3d 600, 606 (8th Cir. 1998) (citing <u>Baxter v.</u>

<u>Palmigiano</u>, 425 U.S. 308, 318 (1976)).  This inference, combined with the timing

of the postings and Plaintiffs' expert's opinion that certain postings on Defendants'

web sites were posted by Purdy, dictates that the Court find in favor of Plaintiffs.

The Court grants Plaintiffs' motion for summary judgment on the

misappropriation claim.

### E.    Permanent Injunction

Plaintiffs request that the Court enter a permanent injunction incorporating

its previous injunction and barring new illegal behavior.

In determining whether a preliminary injunction should be
issued, a district court must take into account the threat of

22

irreparable harm to the movant, the balance between this harm and
the harm to the other party if the injunction is granted, the
probability of movant's success on the merits, and the public interest.
The standard for granting a permanent injunction is essentially the
same as for a preliminary injunction, except that to obtain a
permanent injunction the movant must attain success on the merits.

Bank One, Utah v. Guttau, 190 F.3d 844, 847 (8th Cir. 1999) (citations omitted).

As explained above, Plaintiffs have succeeded on the merits of Count I:

Violation of the Anticybersquatting Consumer Protection Act; Count II:

Infringement of Registered Marks; Count III: False Designation of Origin, False

Description, and False Representation in Connection with the FAEGRE Marks; and

Count VIII: Appropriation of Name.

Plaintiffs have established a threat of irreparable harm because Defendants

have demonstrated that they will not stop posting new comments, or registering

or using infringing domain names and metatags in violation of the law.  The Court

has twice found Purdy in contempt based on his continual actions to defy the

Court's Orders; since the last contempt Order, Purdy has registered yet another

domain name that violates the ACPA and trademark law, Faegre.be; despite

clarification from the Court regarding the legal use of metatags, Purdy has

continued to illegally copy Faegre's metatags wholesale; and despite being held in

contempt for appropriation of the likeness of Faegre attorneys, Purdy has

continued to post statements falsely attributed to Faegre attorneys and to register

domain names incorporating their names.  These actions demonstrate a

23

continuing threat of irreparable harm.  <u>See also</u> <u>Calvin Klein Cosmetics Corp. v.</u>
<u>Lenox Labs., Inc.</u>, 815 F.2d 500, 505 (8th Cir. 1987) (noting that a finding of
probable success of likelihood of confusion in trademark case gives rise to a
presumption of irreparable injury).

The balance of the harms weighs in favor of Plaintiffs because the Court is
only enjoining illegal behavior while still permitting Defendants to criticize Faegre
and its attorneys by posting parody web pages or critical web pages and by using
the FAEGRE Marks as permitted by the fair use doctrine.

The public interest in accurate information and avoiding confusion weighs
in favor of a permanent injunction.

Thus, the Court grants Plaintiffs' request for a permanent injunction
incorporating the Court's previous injunctions and prohibiting additional, new
illegal behavior.

### F.    Judgment on Contempt Sanctions and Attorney Fees

Plaintiffs request that the Court enter judgment in the amount of accrued
contempt sanctions and attorney fees.  Purdy has stated that he will not pay these
amounts.  Entry of judgment will allow Plaintiffs to undertake collection
procedures against Purdy's assets.  The Court grants Plaintiffs' request.

During oral argument on this motion, Purdy requested that the Court
exempt his house from collection efforts.  However, despite granting Purdy the

24

opportunity for post-hearing briefing, there is no evidence before the Court

regarding his home.  This request is premature at this point, and the Court

expresses no opinion regarding the applicability of the Minnesota homestead

exemption to Purdy's home in the event of collection efforts by Plaintiffs.

Plaintiffs request that the Court enjoin Purdy from making non-essential

expenditures, such as expenditures on his web sites, until he has satisfied the

award against Plaintiffs.  They provide no legal support for this request.

Additionally, this request is premature.  The Court has not previously granted final

judgment in this matter and Plaintiffs have not yet pursued collection through

traditional means.

Plaintiffs also request that the Court warn Defendants that violation of the

permanent injunction will result in contempt fines of $500.00 per day.  This

sanction is consistent with the Court's previous orders and will be granted.

### G.    Remaining Claims

Plaintiffs state that if the Court grants the injunctive relieve and monetary

judgment that they seek, the remaining claims can be dismissed without

prejudice, provided that they can reassert those claims within twelve months after

entry of judgment if Defendants appeal the judgment.

According, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED**:

1.  Plaintiffs' Motion for Partial Summary Judgment and Entry of
    Permanent Injunction [Docket No. 139] is **GRANTED** and summary
    judgment on liability only is granted for Plaintiffs on Counts 1, 2, 3,
    and 8 of the First Amended Complaint.

2.  Defendants and their officers, agents, servants, employees, attorneys,
    and all persons in active concert or participation with them who
    receive actual notice of this Order are permanently enjoined from the
    following activity:

    a.  Registering or using any domain name that both (1)
        incorporates, and is identical or confusingly similar to Faegre's
        distinctive and protected marks FAEGRE.COM or FAEGRE &
        BENSON LLP or any other marks identical or confusingly
        similar to any marks used or owned by Faegre, and (2) does
        not alert the internet user to the protest or critical commentary
        nature of the attached web site within the language of the
        domain name itself;

    b.  Registering or using the domain names faegre-benson.com,
        faegre-benson.org, faegre.biz,
        startribune-faegre-bensonlawfirm.com, startribune-faegre.com,
        faegrebensonlawfirm.com, Faegre.be, and hindrocket.com;

    c.  Registering or using domain names that incorporate Plaintiffs'
        protected marks along with the name of another business,
        including but not limited to
        thewashingtonpost-faegrebensonconnection.com;

    d.  Registering or using domain names that incorporate Plaintiffs'
        protected marks along with language related to Christianity,
        including but not limited to
        faegre-benson-christianperspective.com;
        faegre-benson-tencommandments.com;
        faegre-benson-jesus.com; faegre-benson-trialbyjesus.com;
        faegre-benson-jesus-hislittleones.com;

startribune-faegre-benson-jesus.com, and
faegre-benson-eighthcircuit-firstamendment-jesus.com;

e.   Registering or using domain names that incorporate Plaintiffs'
protected marks along with political language, including but
not limited to faegre-benson-voteforpresidentbush.com;
faegre-bensonsupportsjohnkerry.com;
johnkerrylovesfaegre-benson.com; faegre-johnkerry.com;
john-faegre-kerry.com; and johnkerry-faegre-benson.com;

f.   Registering or using domain names that incorporate Plaintiffs'
protected marks along with a neutral term, including but not
limited to faegre-benson-ethics.com;

g.   Registering or using any trademark that is identical or
confusingly similar to Faegre's distinctive and protected marks
FAEGRE & BENSON LLP and FAEGRE.COM or any other mark
used or owned by Faegre;

h.   Illegally appropriating the names or likenesses of Plaintiffs and
all individuals associated or affiliated with Plaintiffs.
Defendants are enjoined from registering or using domain
names that incorporate the names of individuals associated
with Plaintiffs, including feliciaboyd.info, hindrocket.com,
senatorHinderaker.com, and senatorHindrocket.com.
Defendants are enjoined from using the names or likenesses of
Plaintiffs and all individuals associated or affiliated with
Plaintiffs to express support for the positions or messages of the
Defendants, unless Defendants first obtain the written consent
of Plaintiffs or the individuals associated or affiliated with
Plaintiffs whose name or likeness is being used to express such
support.  Defendants within 24 hours of the issuance of this
Order must remove from their web pages any and all such
non-consensual expressions of support.  In particular,
Defendants must remove the statement:  "William Purdy states
that an unnamed source has identified the following attorneys
at Faegre & Benson Law Firm that are HORRIFIED that their
firm contributes to the KILLING of Innocent Children, and that
have signed the in-house petition to the Faegre board to STOP
John Hinderaker's and Faegre & Benson Law Firm's

involvement in the KILLING" and must remove the listing of
Faegre attorneys appearing subsequent to that statement.
Defendants also must remove the following posts from their
message boards:

(1)     Faegre & Benson Law Firm – KILLERS OF CHILDREN !!!
        Judge Alito Agrees with Sonia Shewchuk  11/3/2005
        1:54:07 AM

(2)     I Agree Faegre Should Quit Funding Abortions  Sonia
        Shewchuk  10/13/2005  3:08:07 AM

(3)     No, Faegre doing the suing according to Debbie Kelly in
        Boulder  Joan……  10/12/2005  1:22:42 AM

(4)     Faegre & Benson Law Firm  Female Lawyer At Faegre
        10/5/2005  1:38:05 AM

(5)     Faegre, Hinderaker, & ABORTION  John Hinderaker

(6)     I am ASHAMED for Faegre & Benson

3.     Defendants and their officers, agents, servants, employees, attorneys,
       and all persons in active concert or participation with them who
       receive actual notice of this Order may use Faegre's trademarks in the
       metatags for their web sites only to the extent that they are, in good
       faith, describing the content of the web site and such persons may
       not use Faegre's trademarks in their metatags in order to divert
       internet users from Faegre's web site.  Examples of the types of
       actions that would be indicative of bad faith include wholesale
       copying of Faegre's meta-description tags or HTML code, use of
       Faegre's marks in metatags attached to a site with a confusingly
       similar domain name, and use of Faegre's marks beyond what is
       necessary to accurately describe the contents of the web sites.

4.     This Order applies to all persons and entities acting in concert with,
       or in the custody, care, and control of, Defendant William S. Purdy,
       Sr., including but not limited to all person or entities listed as
       registrants of or as technical or administrative contacts for, any of the
       following domain names: faegre-benson.com, faegre-benson.org,

28

faegre.biz, startribune-faegre-bensonlawfirm.com,
startribune-faegre.com, faegrebensonlawfirm.com, and Faegre.be.

5.     All Defendants and their officers, agents, servants, employees,
       attorneys, and all persons in active concert or participation with them
       who receive actual notice of this Order, shall pay a sum of $500 per
       day for each day that they are in contempt of this Order.

6.     Judgment shall be entered in favor of Plaintiffs on the accrued
       contempt fine of sixty-nine thousand five hundred dollars ($69,500)
       awarded on April 27, 2005, plus thirty-seven thousand one hundred
       thirty-nine dollars and twenty cents ($37,139.20) in attorneys fees
       awarded to Plaintiffs in the September 2, 2004, Contempt Order, plus
       accrued interest at an annual pre-judgment interest rate of 4% in the
       amount of three thousand seven hundred fifty-three dollars and
       seventy cents ($3,753.70) as of March 15, 2006.

7.     Plaintiffs' remaining claims, including all claims for compensatory and
       punitive damages, are dismissed without prejudice.  Plaintiffs may
       reassert those claims within twelve months after entry of judgment
       (relating back to the date of the original complaint) if Defendants
       appeal the judgment entered upon this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 24, 2006                    s / Michael J. Davis
                                          Judge Michael J. Davis
                                          United States District Court